**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

PLATINUM MANUFACTURING
INTERNATIONAL, INC.,
a Florida corporation,

      Plaintiff,

v.

UNINET IMAGING, INC., a California
corporation, SUMMIT TECHNOLOGIES,
L.L.C., a New York limited liability company,
FLORIDA RAPID ENGINEERING, INC.,
a Florida corporation, ASIAN IMPORT
EXPORT d/b/a GCAI, INC., a Wyoming
corporation, XTREME MANUFACTURING,
INC., a Florida corporation, SARAH BRAGG d/b/a
CHIPTECH, ANNA KOVALENKO d/b/a
DODO & ANYA, L.L.C., DAVID OLMSTED,
JASON OLMSTED, WAYNE OLMSTED, and
STEVE LAMOTHE,

      Defendants.

**CASE NO.:**
**JURY TRIAL REQUESTED**

_____/

**COMPLAINT FOR COPYRIGHT INFRINGEMENT, MISAPPROPRIATION OF**
**TRADE SECRET, BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTY,**
**UNFAIR COMPETITION, CONVERSION, GOODS SOLD, ACCOUNTS**
**STATED, AND UNJUST ENRICHMENT**
**INJUNCTIVE RELIEF AND JURY TRIAL REQUESTED**

COMES NOW, Plaintiff PLATINUM MANUFACTURING INTERNATIONAL,

INC. ("PMI"), and for its Complaint against Defendants UNINET IMAGING, INC.

("UNINET"), SUMMIT TECHNOLOGIES, L.L.C. ("SUMMIT"), FLORIDA RAPID

ENGINEERING, INC. ("RAPID"), ASIAN IMPORT EXPORT d/b/a GCAI, INC.

("GCAI"), XTREME MANUFACTURING, INC. ("XTREME"), SARAH BRAGG d/b/a

CHIPTECH ("CHIPTECH"), ANNA KOVALENKO d/b/a DODO & ANYA, L.L.C. ("D&A"), DAVID OLMSTED, JASON OLMSTED, WAYNE OLMSTED, AND STEVE LAMOTHE, alleges:

## PARTIES, JURISDICTION AND VENUE

1.     PMI is a Florida corporation, with its principal place of business at 10166 66th Street N., Pinellas Park, Florida 33782. PMI conducts business in this judicial district and division. PMI brings this action on behalf of itself and as assignee of David Abraham d/b/a Inter Solution Ventures, Ltd. ("ISV"). PMI and ISV maintain a business relationship in which ISV markets and sells products manufactured by PMI. In order to obtain complete relief from the Defendants for the claims asserted, and because ISV is not presently able to pursue its claims against the Defendants, PMI obtained an assignment of intellectual property rights and causes of action from ISV that form part of the basis for the relief requested herein.

2.     UNINET is a California corporation, with its principal place of business at 11124 Washington Blvd., Culver City, CA 90232. UNINET engages in business within this judicial district and division, and committed acts herein complained of in this judicial district and division.

3.     SUMMIT is a New York limited liability company, with its principal place of business at 10 Meadowgate East, Head of the Harbor, New York, 11787. Upon information and belief, SUMMIT is owned in whole or in part by UNINET. SUMMIT engages in business within this judicial district and division, and committed acts herein complained of in this judicial district and division.

2

4.     RAPID is an administratively dissolved Florida corporation that had its principal place of business at 2248 N.E. Coachman Road, Clearwater, Florida 33765. The last known directors of RAPID are believed to be Jason Olmsted, David Olmsted, and Steve Lamothe.  At all times relevant to the causes alleged below, RAPID engaged in business within this judicial district and division, and committed acts herein complained of in this judicial district and division.

5.     GCAI is an administratively dissolved Wyoming corporation that had its principal place of business at 2248 N.E. Coachman Road, Clearwater, Florida 33765. The last known directors or officers of GCAI are believed to be Jason Olmsted and Guilllermo D. Jalil.  At all times relevant to the causes alleged below, GCAI engaged in business within this judicial district and division, and committed acts herein complained of in this judicial district and division.

6.     XTREME is an administratively dissolved Florida corporation that had its principal place of business at 10133 Miracle Lane, New Port Richey, Florida 34654.  The last known directors or officers of XTREME are believed to be Steve Lamothe and Matthew Brandenstein.  At all times relevant to the causes alleged below, XTREME engaged in business within this judicial district and division, and committed acts herein complained of in this judicial district and division.

7.     CHIPTECH is the d/b/a of Sarah Brag who resides in Holiday, Florida.  At all times relevant to the causes alleged below, CHIPTECH engaged in business within this judicial district and division, and committed acts herein complained of in this judicial district and division.

3

8. Upon information and belief, DODO & ANYA is the d/b/a of Anna Kovalenko who resides in Wesley Chapel, Florida. At all times relevant to the causes alleged below, D&A engaged in business within this judicial district and division, and committed acts herein complained of in this judicial district and division.

9. Upon information and belief, David Olmsted resides in Clearwater, Florida. At all times relevant to the causes alleged below, David Olmsted engaged in business within this judicial district and division, and committed acts herein complained of in this judicial district and division.

10. Upon information and belief, Jason Olmsted resides in Clearwater, Florida. At all times relevant to the causes alleged below, Jason Olmsted engaged in business within this judicial district and division, and committed acts herein complained of in this judicial district and division.

11. Upon information and belief, Wayne Olmsted resides in Trinity, Florida. At all times relevant to the causes alleged below, Wayne Olmsted engaged in business within this judicial district and division, and committed acts herein complained of in this judicial district and division.

12. Upon information and belief, Steve Lamothe resides in New Port Richey, Florida. At all times relevant to the causes alleged below, Steve Lamothe engaged in business within this judicial district and division, and committed acts herein complained of in this judicial district and division.

13. As set forth in greater detail below, this is an action for copyright infringement under the Copyright Act, 17 U.S.C. §501, and unfair competition under the

4

Lanham Act, 15 U.S.C. §1125. Jurisdiction for these counts is conferred on this Court pursuant to 28 U.S.C. §§1331 and 1338 and 15 U.S.C. §1121. This is also an action under Florida law for trade secret misappropriation pursuant to Chapter 688 of the Florida Statutes, breach of fiduciary duty, unfair competition, breach of contract, conversion, goods sold, accounts stated, and unjust enrichment. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

14.     Defendants have committed the acts complained of herein in interstate commerce, including within this judicial district and division. The Defendants have regularly conducted business within this judicial district and division, and otherwise have sufficient minimum contacts with the State of Florida for this Court to exercise personal jurisdiction over all Defendants.

15.     Venue lies in this judicial district pursuant to 28 U.S.C. §1391.

## **FACTS RELEVANT TO ALL COUNTS**

16.     PMI develops and manufactures innovative components and software for imaging devices, such as printers and copiers. PMI's primary focus is in developing, manufacturing and supplying microcontrollers and components to companies that repair and recycle toner cartridges for reuse in imaging devices.

17.     When the toner cartridge included with an imaging devices runs out of toner, a customer must generally either purchase a replacement toner cartridge from the original equipment manufacturer ("OEM") or purchase a compatible or remanufactured toner cartridge from an independent manufacturer. The relatively high costs of replacement OEM toner cartridges and compatible independent toner cartridges, make

5

the purchase of independently remanufactured toner cartridge attractive to consumers.

18.     Remanufacturing most toner cartridges requires not only replacing the depleted toner and replacing or repairing any worn parts, but also replacing the microcontroller mounted to the cartridge ("printer chip"), which supports communications between the toner cartridge and imaging device related to operating and diagnostic functions.  OEM printer chips may also be programmed with recognition features, such as authentication sequences, which make the development of non-OEM replacement printer chips difficult.  If a replacement printer chip is not programmed with software that facilitates proper communication between the imaging device and installed toner cartridge, the imaging device will not function.

19.     In 2003, in an attempt to lock out the aftermarket (non-OEM) chips, many OEM imaging systems began using new firmware, or imbedded computer programs, with more complex recognition features.  Existing non-OEM printer chips that had worked with the previous firmware, were no longer able to support communications with imaging devices operating with the new firmware, thereby preventing the remanufacture of toner cartridges for theses devices.

20.     PMI, along with its sales partner ISV, were the first to develop and offer a replacement printer chip that functioned with the new firmware.  PMI owns all rights and title to the program written for the new replacement chips (hereinafter the "PMI Program").

21.     The PMI Program contains original material owned by PMI and constitutes copyrightable subject matter under the laws of the United States.

6

22.     PMI has complied in all respects with the Copyright Act and has secured the exclusive rights and privileges in and to the copyright of the PMI Program.  PMI received a Certificate of Registration from the United States Copyright Office having Registration Number TX 6-822-577.

23.     In registering its copyright in the PMI Program, PMI redacted trade secret portions of the source code deposited, as permitted by the United States Copyright Office.

24.     The trade secret portions of the PMI Program derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from the disclosure or use of the trade secrets. The PMI Program is, and has been, the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

25.     Jason Olmsted, David Olmsted and Steve Lamothe (collectively referred to as the "Employees") are former employees of PMI.  Each of these individuals executed an agreement for employment commencing October 1, 2003, under which PMI would be the exclusive owner of any works or inventions relating to printers and related technology developed in whole or part by the Employees.  In addition, the Employees were required to provide PMI with all materials and information related to their work upon termination of employment.

26.     In addition to express contractual obligations, the Employees owed a fiduciary duty to PMI and its business associate ISV to maintain in confidence, (i) banking and financial accounts and information, (ii) communications with counsel, and

7

(iii) technical, customer, and other trade secret information.

27.     PMI recently learned, after significant investigation and expense, that while employed by PMI and thereafter, the Employees surreptitiously organized several businesses to compete with PMI and ISV.  The Employees misappropriated PMI and ISV trade secret information, including source code and data for printer chips, technical information, customer information and financial information.  The Employees also stole equipment and materials for use in competing businesses.  While employed by PMI, the Employees purchased circuit boards and equipment for manufacturing printer chips using PMI and ISV accounts, which materials they secretly diverted to the Employees' competing businesses.

28.     After competing businesses were established, the Employees ceased employment with PMI.  PMI has recently learned that since the termination of their employment, the Employees have used PMI and ISV's trade secrets, equipment, materials, technology, and customer information in breach of their employment agreements, in breach of their fiduciary duties, and in violation of state and federal law.

29.     The Employees have also engaged in other malicious acts to harm PMI and ISV for competitive benefits including, *inter alia*, providing false information to PMI and ISV's competitors to instigate industry disputes and litigation, threatening to publicly release PMI and ISV's trade secrets, making false reports to the Occupational Safety and Health Administration, diverting correspondence intended for PMI and ISV vendors and customers, and modifying PMI and ISV account information such as passwords.

30.     In one recording currently maintained by the Federal Bureau of

8

Investigation, Steve Lamothe left a message on the cell phone of PMI's principal stating: "Umm so I guess my next business will be maybe going to all you major customers and see how interested they are in making their own chip solutions and I'll just charge them a nominal consulting fee for the secrets. . . ." PMI has recently learned that Mr. Lamothe made good on his threats.

31. When deposed in other litigation about their involvement in the acts alleged herein, the Employees either testified falsely or asserted a Fifth Amendment right not to answer. Both Steve Lamothe and Jason Olmsted refused to answer questions about the source of the programs used in the printer chips they sold through the companies and d/b/a's named herein, under a claim of Fifth Amendment privilege.

32. The Employees were aided and abetted in the unlawful acts described above by Wayne Olmsted (father of Jason and David), D&A, and CHIPTECH who assisted the Employees in exploiting the stolen information and materials and in establishing competing businesses. Upon information and belief Wayne Olmstead, *inter alia*, assisted the Employees in producing infringing printer chips with the stolen information, programs, equipment and materials. Upon information and belief, D&A and CHIPTECH were d/b/a/'s established and used by the Employees to, among other things, sell PMI and ISV trade secrets, establish bank accounts, and otherwise conceal their unlawful acts and earnings.

33. The Employees have taken extensive steps to hide their participation in the unlawful acts alleged. To hide their unlawful activity, the Employees and Wayne Olmsted formed a series of companies, including XTREME, RAPID, and GCAI to use

the trade secrets, equipment, materials and proprietary information stolen from PMI and ISV, and also controlled D&A and CHIPTECH for the same purposes.  Upon information and belief, several new companies have recently been formed by certain Defendants to transfer the illegal enterprises to, including, Access Technology Group, L.L.C., CDP Manufacturing, L.L.C., Information Technology, Inc.

34.     In 2003 and 2004, Defendant SUMMIT was a customer of PMI and ISV. At that time, SUMMIT was a distributor of printer chips, but not a manufacturer.

35.     Upon information and belief, Steve Lamothe has been directly or indirectly retained as a consultant or employee by UNINET and SUMMIT, and with the aid of some or all of the other Defendants provided those competitors of PMI and ISV with copyrighted and trade secret source code or other trade secret information to assist them in developing a printer chip compatible with the new firmware.  Upon information and belief, UNINET and SUMMIT have directly and/or indirectly wired money to D&A and CHIPTECH accounts for trade secret and proprietary information of PMI and ISV.

36.     After SUMMIT and UNINET obtained the information necessary to produce their own printer chips, they ceased purchasing printer chips and other products from PMI and ISV.

37.     Upon information and belief, SUMMIT and UNINET currently offer printer chips, which incorporate ISV and PMI's trade secrets and copyrighted program.

38.     SUMMIT has also failed to pay for a significant amount of products ordered from ISV.

39.     SUMMIT began submitting purchase orders to ISV for toner cartridge

10

components in 2003. SUMMIT established an ongoing business relationship with ISV in which it purchased significant quantities of toner cartridge components. SUMMIT was provided invoices for all purchases, which SUMMIT initially paid.

40.     Beginning on or about December 3, 2004 and through on or about January 17, 2005, SUMMIT submitted four purchase orders to ISV for toner cartridge components and agreed to pay $25,116.00 for the products. True and correct copies of the Purchase Orders are attached at Exhibit 1 and true and correct copies of the Invoices are attached at Exhibit 2. ISV delivered the products ordered to SUMMIT. As set forth in the table below, SUMMIT was issued invoices reflecting the agreed purchase price and amount due.

| Date of Invoice | Agreed Amount Due |
|---|---|
| 12/14/2004 | 8,372.00 |
| 12/16/2004 | 3,348.80 |
| 1/17/2005 | 6,697.60 |
| 1/25/2005 | 6,697.60 |

41.     SUMMIT has failed to pay for products it ordered and received. SUMMIT did not return any of the ISV products, identify any quality control issues, identify any shortages in the shipments, or object to the invoice amounts.

42.     All conditions predicate for the causes of action asserted herein have occurred.

11

## Count I
## Copyright Infringement
## (Against All Defendants)

43.     This Count One is an action by PMI against all Defendants for damages based on Copyright Infringement in violation of Title 17, United States Code.

44.     PMI repeats and re-alleges the allegations of paragraphs 1-42 of this Complaint as though fully set forth herein.

45.     PMI owns all rights, title and interest to the PMI Program registered with the United States Copyright Office as Registration Number TX 6-822-577.

46.     The PMI Program contains original material owned by PMI and constitutes copyrightable subject matter under the laws of the United States.

47.     All of the Defendants have had access to and have copied, made derivatives, reproduced and/or distributed one or more copies of the PMI Program.

48.     The copying, making derivative copies, reproduction or distribution by the Defendants of the PMI Program was without authorization by PMI, and therefore constitutes an infringement in violation of 17 U.S.C. §501.

49.     PMI has suffered a compensable injury by reason of the infringing activities of the Defendants and PMI will continue to suffer irreparable injury unless the Defendants infringing activities are preliminarily and then permanently enjoined.

50.     The Defendants infringing activities were done knowingly and in a willful and reckless disregard of PMI's rights.

51.     PMI has been forced to retain the undersigned counsel to enforce its rights to copyright and is entitled to reasonable fees from the Defendants.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter such preliminary and final orders and judgments as are necessary to provide Plaintiff with the following relief:

a)   Preliminarily and then permanently enjoining the Defendants from infringing Plaintiff's copyrighted work;

b)   Entering a judgment for monetary damages for the acts of infringement by the Defendants;

c)   Entering a judgment for return of copies of Plaintiff's copyrighted works in the possession, custody or control of the Defendants;

d)   Entering a judgment for destruction of all products possessed by the Defendants which infringe Plaintiff's copyrighted work;

e)   Enhanced damages as provided by Title 17;

f)   Reasonable attorneys' fees; and

g)   Such other and further relief as this Court deems just and proper.

### Count II
### Trade Secret Misappropriation
### (Against All Defendants)

52.   This Count Two is an action by PMI against all Defendants for damages based on misappropriation of trade secrets.

53.   PMI repeats and re-alleges the allegations of paragraphs 1-42 of this Complaint as though fully set forth herein.

54.   PMI and ISV's proprietary information, including customer and vendor information, financial information, product development information, production

13

methods and source code constitute trade secrets within the meaning of 688.002(4), Fla. Stat.

55.     PMI and ISV's proprietary information derives economic value from not being generally known to, and not being readily ascertainable by, proper means by other persons, such as Defendants, who may be able to obtain economic value from its disclosure or use.

56.     PMI and ISV's proprietary information has been the subject of efforts that are reasonable under the circumstances to maintain the secrecy of that information.

57.     Without PMI or ISV's authorization, the Defendants have misappropriated PMI and ISV's trade secrets for their own use and benefit.

58.     PMI and ISV have suffered compensable injury by reason of the Defendants' misappropriation of trade secrets, and will continue to suffer an irreparable injury unless the Defendants' conduct is preliminarily and then permanently enjoined.

59.     Upon information and belief, the conduct of the Defendants was engaged in with a willful, wanton or reckless disregard for PMI and ISV's rights, so as to justify an award of exemplary damages under 688.004(2), Fla. Stat., and attorney's fees under 688.005, Fla. Stat.

60.     ISV assigned its rights to bring the cause of action for damages alleged in this Count Two to PMI.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter such preliminary and final orders and judgments as are necessary to provide Plaintiff with the following relief:

a)    A preliminary and then permanent injunction prohibiting the Defendants from further misappropriating Plaintiff's trade secrets or otherwise attempting to commercially exploit those trade secrets;

b)    Entering a judgment for monetary damages;

c)    Entering a judgment for return of Plaintiff's trade secret information in the possession, custody or control of the Defendants;

d)    Entering a judgment for destruction of all products possessed by the Defendants which exploit Plaintiff's trade secrets;

e)    Exemplary damages;

f)    Reasonable attorneys' fees; and

g)    Such other and further relief as this Court deems just and proper.

## Count III
### Unfair Competition
### (Against SUMMIT)

61.    This Count Three is an action by PMI against SUMMIT for damages based on unfair competition under the Lanham Act.

62.    PMI repeats and re-alleges the allegations of paragraphs 1-42 of this Complaint as though fully set forth herein.

63.    ISV uses the mark **ISV** in interstate commerce to identify ISV as the source of printer chips. The relevant consumers have come to recognize the mark **ISV** as identifying the source of certain innovative printer chips.

64.    SUMMIT distributed **ISV** printer chips from 2003 until early 2005 when SUMMIT abruptly ceased purchasing printer chips from ISV.

15

65.     After SUMMIT ceased distributing ISV printer chips, SUMMIT continued to hold itself out as an ISV distributor and continued to represent to consumers that the printer chips it offered originated with ISV, and in fact uses the **ISV** mark in connection with its own printer chips.  For example, SUMMIT's website offered **ISV** printer chips as recently as December of 2007.

66.     SUMMIT has used the ISV mark in interstate commerce without authorization and in connection with goods and service that do not originate with ISV.

67.     SUMMIT's use in commerce of ISV's mark is a false designation of origin, which is likely to cause confusion, cause mistake, and to deceive as to the affiliation, connection, or association of SUMMIT with ISV and as to the origin, sponsorship, or approval of SUMMIT's goods or services by ISV.

68.     SUMMIT's acts are in violation of 15 U.S.C. §1125(a) in that SUMMIT has used in connection with goods and services a false designation of origin, a false or misleading description and misrepresentation of fact which is likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of SUMMIT with ISV as to the origin, sponsorship and approval of Defendants' goods, services, and commercial activities by ISV.

69.     Upon information and belief, Defendants have committed the aforementioned conduct knowingly, willfully, and unlawfully, and with the specific intent to defraud consumers.

70.     By reason of SUMMIT's acts alleged herein, ISV has suffered and will continue to suffer damage to its business, reputation, and goodwill, and is entitled to

16

recover damages for this injury, including the lost profits ISV would have made but for the acts of SUMMIT herein, together with the ill-gotten gains of SUMMIT.

71.    ISV has no adequate remedy at law if SUMMIT's activities are not enjoined by this Court, and ISV is suffering irreparable harm and injury to their reputation as a result thereof.

72.    ISV assigned its rights to bring the cause of action for damages alleged in this Count Three to PMI.

73.    PMI has been forced to retain the undersigned counsel to enforce their rights and are entitled to reasonable fees from SUMMIT.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter such preliminary and final orders and judgments as are necessary to provide Plaintiff with the following relief:

a)    Permanent injunctive relief, enjoining SUMMIT's violations of the Lanham Act, 15 U.S.C. § 1125(a), including enjoining SUMMIT from using the **ISV** mark in connection with goods and services that do not originate with ISV;

b)    That the Court award monetary damages sufficient to compensate PMI for the actual damages suffered, together with an award trebling that amount in accordance with 15 U.S.C. §1117;

c)    That SUMMIT be required to provide an accounting for their financial records to determine the amount of its profits and other unjust enrichment attributable to its unlawful acts;

17

d)  Reasonable attorney's fees, costs and expenses of this lawsuit; and

e)  Such other and further relief as this Court deems just and proper.

## Count IV
### Unfair Competition
### (Against SUMMIT, Jason Olmsted, David Olmsted, and Steve Lamothe)

74.  This Count Four is an action by PMI against SUMMIT, Jason Olmsted, David Olmsted, and Steve Lamothe for damages based on unfair competition under Florida common law.

75.  PMI repeats and re-alleges the allegations of paragraphs 1-42 of this Complaint as though fully set forth herein.

76.  ISV uses the mark **ISV** in interstate commerce to identify ISV as the source of printer chips. The relevant consumers have come to recognize the mark **ISV** as identifying the source of certain innovative printer chips.

77.  SUMMIT distributed **ISV** printer chips from 2003 until 2005 when SUMMIT abruptly ceased purchasing printer chips from ISV.

78.  After SUMMIT ceased distributing actual **ISV** printer chips, SUMMIT continued to hold itself out as an ISV distributor and continued to represent to consumers that the printer chips it offered were **ISV** printer chips and in fact uses the **ISV** mark in connection with its printer chips. For example, SUMMIT's website offered **ISV** printer chips as recently as December of 2007.

79.  SUMMIT has used the **ISV** mark in interstate commerce without authorization and in connection with goods and service that do not originate with ISV.

80.  By misappropriating ISV's mark, SUMMIT has utilized unfair means to

18

usurp the good will associated with the mark **ISV**. SUMMIT has acted with the intent to deceive the public into believing that the goods and services sold or offered by SUMMIT are made by, approved by, sponsored by, or affiliated with ISV. SUMMIT has acted with the specific intent to palm off its goods and services as those of ISV, with the intent to deceive and defraud the public.

81.     Jason Olmsted, David Olmsted, and Steve Lamothe have engaged in numerous acts of unfair competition, including, *inter alia*, making false reports about PMI to government agencies, providing false information to third-party competitors to instigate litigation, threatening widespread publication of PMI's trade secrets, modifying PMI and ISV account information, and diverting correspondence intended for PMI and ISV vendors and customers. These acts were done to harm PMI and ISV so as to obtain an unfair competitive advantage.

82.     Upon information and belief, SUMMIT, Jason Olmsted, David Olmsted, and Steve Lamothe have committed the aforementioned conduct knowingly, willfully, and unlawfully, and with the specific intent to defraud consumers.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter such preliminary and final orders and judgments as are necessary to provide Plaintiff with the following relief:

a)      A preliminary and then permanent injunction against acts of unfair competition by SUMMIT, Jason Olmsted, David Olmsted, and Steve Lamothe;

b)      Compensatory damages;

19

c)      Punitive damages under Florida law;

d)      That SUMMIT, Jason Olmsted, David Olmsted, and Steve Lamothe be required to provide an accounting for their financial records to determine the amount of its profits and other unjust enrichment sums attributable to its unlawful acts;

e)      Reasonable attorney's fees, costs and expenses of this lawsuit; and

f)      Such other and further relief as this Court deems just and proper.

### Count V
### Breach of Contract
### (Against Jason Olmsted, David Olmsted, and Steve Lamothe)

83.      This Count Five is an action by PMI against the Employees named above for damages based on breach of contract.

84.      PMI repeats and re-alleges the allegations of paragraphs 1-42 of this Complaint as though fully set forth herein.

85.      The Employees each entered into a valid employment agreement with PMI.

86.      The Employees have materially breached the terms of their employment agreements, proximately causing damages to PMI.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter such preliminary and final orders and judgments as are necessary to provide Plaintiff with the following relief:

a)      Entering a judgment for monetary damages for the breach of contract by the Employees; and

b)      Such other and further relief as this Court deems just and proper.

## Count VI
### Breach of Fiduciary Duty
### (Against Jason Olmsted, David Olmsted, and Steve Lamothe)

87.     This Count Six is an action by PMI against the Employees named above for damages based on breach of fiduciary duty.

88.     PMI repeats and re-alleges the allegations of paragraphs 1-42 of this Complaint as though fully set forth herein.

89.     As a result of the unique relationship between the Employees and PMI in which PMI placed trust and confidence in the Employees, the Employees had a fiduciary obligation to protect the interests of PMI.

90.     The Employees breached their fiduciary duty by not protecting PMI's interest in, and converting for their own use and benefit to the detriment of PMI, valuable technical, financial, and customer information entrusted to the employees.   The employees further breached their fiduciary duty by making unauthorized use of PMI and ISV accounts and converting ISV and PMI property entrusted to the Employees.

91.     The Employees purposefully, willfully, wantonly and recklessly disregarded and breached their fiduciary obligations.

92.     As a direct and proximate result of The Employees' actions, PMI has suffered substantial monetary damages.

93.     ISV assigned its rights to bring the cause of action for damages alleged in this Count Six to PMI.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter such

preliminary and final orders and judgments as are necessary to provide Plaintiff with the following relief:

    a)    Order an accounting of all moneys received by the Employees relating to the sale and use of PMI's confidential information, accounts, and property;

    b)    Enter a judgment for monetary damages for breach of fiduciary duty;

    c)    Punitive damages;

    d)    Reasonable attorneys' fees; and

    e)    Such other and further relief as this Court deems just and proper.

### Count VII
**Conversion**
**(Against Jason Olmsted, David Olmsted, and Steve Lamothe)**

94.    This Count Seven is an action by PMI against the Employees named above for damages based on Conversion.

95.    PMI repeats and re-alleges the allegations of paragraphs 1-42 of this Complaint as though fully set forth herein.

96.    PMI owns equipment and materials used in the manufacture of printer chips.

97.    The Employees intentionally acquired, without authorization, equipment and materials belonging to PMI.

98.    The Employees have intentionally acted to deprive PMI of the equipment and materials.

22

99.     PMI has demanded return of the equipment and materials, but the Employees have refused without right.

100.    As a direct and proximate result of The Employee's actions, PMI has suffered substantial monetary damages.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter such preliminary and final orders and judgments as are necessary to provide Plaintiff with the following relief:

a)     An award of compensatory damages;

b)     An award of costs and attorney's fees; and

c)     Such other and further relief as this Court deems just and proper.

### COUNT VIII
### Goods Sold
### (Against SUMMIT)

101.    This Count Eight is an action by PMI, as assignee of ISV, against SUMMIT for damages based on goods sold.

102.    PMI repeats and re-alleges the allegations of paragraphs 1-42 of this Complaint as though fully set forth herein.

103.    SUMMIT ordered certain goods identified in the purchase orders attached at Exhibit 1.

104.    The goods ordered by SUMMIT were delivered by ISV.

105.    SUMMIT and ISV agreed upon the price of the goods ordered by SUMMIT and delivered by ISV.

106.    SUMMIT failed to pay the amounts due.

23

107.    SUMMIT owes ISV $25,116.00, plus interest.

108.    ISV assigned its rights to bring the cause of action for damages alleged in this Count Eight to PMI.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter such preliminary and final orders and judgments as are necessary to provide Plaintiff with the following relief:

    a)      An award of compensatory and incidental damages; and

    b)      Such other and further relief as this Court deems just and proper.

## COUNT IX
### Account Stated
### (Against SUMMIT)

109.    This Count Nine is an action by PMI, as assignee of ISV, against SUMMIT for damages based on account stated.

110.    PMI repeats and re-alleges the allegations of paragraphs 1-42 of this Complaint as though fully set forth herein.

111.    SUMMIT and ISV maintained an ongoing relationship concerning the purchase of toner cartridge wastebins by SUMMIT from ISV.

112.    During the course of the parties' ongoing business relationship, SUMMIT submitted purchase orders to ISV for specified products and expressly agreed to pay a specific price for those products. All products were delivered to SUMMIT by ISV as agreed. ISV submitted invoices for each of the purchase orders to SUMMIT.

113.    At no time did SUMMIT object to the amounts due reflected in the invoices submitted by ISV during the regular course of dealings between SUMMIT and

24

ISV.  A substantial time has passed since ISV submitted the invoices and SUMMIT has not objected to the amounts due.

114.    By the parties' agreements, $25,116.00 plus interest is the correct amount due, which amount SUMMIT agreed to pay through the purchase orders submitted by SUMMIT in the regular course of dealings between the parties, and in failing to render any objection to the invoices submitted by ISV.

115.    ISV assigned its rights to bring the cause of action for damages alleged in this Count Nine to PMI.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter such preliminary and final orders and judgments as are necessary to provide Plaintiff with the following relief:

        a)      An award of compensatory and incidental damages; and

        b)      Such other and further relief as this Court deems just and proper.

### COUNT X
**Unjust Enrichment**
**(Against SUMMIT)**

116.    This Count Ten is an action by PMI, as assignee of ISV, against SUMMIT for damages based on SUMMIT's unjust enrichment under the common law of Florida.

117.    PMI repeats and re-alleges into this Count Ten the allegations of paragraphs 1-42 of this Complaint as though fully set forth herein.

118.    ISV possessed valuable goods in the nature of wastebins for laser printer toner cartridges.

119.    SUMMIT submitted purchase orders to ISV agreeing to purchase the

25

valuable goods for $25,116.00.

120.    ISV delivered the valuable goods to SUMMIT.

121.    SUMMIT has maintained possession of the valuable goods without payment to ISV.

122.    SUMMIT has been unjustly enriched by its retention of the valuable goods without payment to ISV.  ISV suffered damages from SUMMIT's unjust enrichment in the amount of $25,116.00, plus interest.

123.    ISV assigned its rights to bring the cause of action for damages alleged in this Count Ten to PMI.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter such preliminary and final orders and judgments as are necessary to provide Plaintiff with the following relief:

a)    An award of compensatory damages; and

b)    Such other and further relief as this Court deems just and proper.

Respectfully submitted this 13th day of February, 2008.

Brian R. Gilchrist
Florida Bar No. 774065
bgilchrist@addmg.com
Jeffrey S. Boyles
Florida Bar No. 722308
jboyles@addmg.com
ALLEN, DYER, DOPPELT,
MILBRATH & GILCHRIST, P.A.
255 S. Orange Ave., Suite 1401
Orlando, Florida 32801
407-841-2330 – Telephone
407-841-2343 – Facsimile
**Attorneys for Plaintiff**

# Exhibit 1

Sent By: Msys 7800;                    1111;                3 Dec'04  2:06PM; Job 999;Page 1/1

**000**                       **PURCHASE ORDER**                    Page I of I

## SUMMIT TECHNOLOGIES LLC

95 Orville Drive                              P.O. NUMBER : **0020793**
Bohemia, NY 11716
                                             ORDER DATE : 12/03/04

**Phone: 631-218-8376**
**Fax:: 631-218-3285**                       VENDOR NUMBER : V1200

                                 SHIP TO :

VENDOR:                          **SUMMIT TECHNOLOGIES**

I S V Chips                      95 Orville Drive
45 Main Street                   Bohemia, NY 11716
Suite 309 #300
Brooklyn, NY 11201

Prepaid:    0.00

| SHIP VIA: | | PHONE: 912-634-7762 | | Contact | TERMS |
| | | FAX:  912-634-1073 | | JUNIOR | Net 15 Days |

| ITEM NUMBER | | Vendor # | ORDERED | B/O | UNIT COST | AMOUNT |
|---|---|---|---|---|---|---|
| UWLEX | | 7905 | 2,800.000 | 0.00 | 2.99 | 8,372.00 |
| 000 | Universal Lexmark Waste Hopper | | | | | |

DAVID LET ME KNOW WHEN THEY ARE READY FOR PICK UP

**YOU MUST: FAX THIS ORDER BACK WITH A NOTE AS TO WHEN THE**      Net Order:      8,372.00
**ORDER WILL SHIP, ANY BACK ORDERS,  AND AN ESTIMATE WHEN B/O**
**WILL SHIP. Fax 631-218-3285 or Phone 631-218-8376 EXT 210 only if necessary.**   Freight:        0.0
**ALL ITEMS ARE SUBJECT TO QUALITY CONTROL INSPECTION**          Order Total:    8,372.0

p. 2

# 000

## PURCHASE ORDER

Page 1 of 1

## SUMMIT TECHNOLOGIES LLC

95 Orville Drive

Bohemia, NY 11716

Phone: 631-218-8376

Fax:: 631-218-3285

P.O. NUMBER : **0020939**

ORDER DATE : 12/15/04

VENDOR NUMBER : V1200

**VENDOR:**

I S V Chips
45 Main Street
Suite 309 #300
Brooklyn, NY 11201

SHIP TO :

**SUMMIT TECHNOLOGIES**

95 Orville Drive
**Bohemia, NY 11716**

Prepaid:   0.00

| SHIP VIA: | | | | | |
|---|---|---|---|---|---|
| | PHONE: 912-634-7762 FAX:  912-634-1073 | | Contact JUNIOR | TERMS Net 15 Days | |
| ITEM NUMBER | Vendor # | ORDERED | B/O | UNIT COST | AMOUNT |
| UWLHX 000    Universal Lexmark Waste Hopper | 7905 | 1,120.000 | 0.00 | 2.99 | 3,348.80 |

Please Call when available

| | |
|---|---|
| YOU MUST: FAX THIS ORDER BACK WITH A NOTE AS TO WHEN THE ORDER WILL SHIP, ANY BACK ORDERS, AND AN ESTIMATE WHEN B/O WILL SHIP. Fax 631-218-3285 or Phone 631-218-8376 EXT 210 only if necessary. ALL ITEMS ARE SUBJECT TO QUALITY CONTROL INSPECTION | Net Order:     3,348.80  Freight:           0.00  Order Total:     3,348.80 |

# 000

## PURCHASE ORDER

Page 1 of 1

## SUMMIT TECHNOLOGIES LLC

95 Orville Drive
Bohemia, NY 11716

**Phone: 631-218-8376**
**Fax:: 631-218-3285**

REVISED

P.O. NUMBER : **0021197**

ORDER DATE : 01/17/05

VENDOR NUMBER : VI200

SHIP TO :

**SUMMIT TECHNOLOGIES**
**95 Orville Drive**
**Bohemia, NY 11716**

VENDOR:

J S V Chips
45 Main Street
Suite 309 #300
Brooklyn, NY 11201

Prepaid:   0.00

| SHIP VIA: | PHONE: 912-634-7762 | | Contact | TERMS |
| | FAX:  912-634-1073 | | JUNIOR | Net 15 Days |

| ITEM NUMBER | Vendor # | REC | ORDERED | B/O | UNIT COST | AMOUNT |
|---|---|---|---|---|---|---|
| UWLEX 000 | 7905 | | 2,240.000 | 0.00 | 2.99 | 6,697.60 |
| Universal Lexmark Waste Hopper | | | | | | |

DAVID PLEASE LET ME KNOW WHEN THEY ARE READY TO BE
PICKED UP.

**YOU MUST: FAX THIS ORDER BACK WITH A NOTE AS TO WHEN THE**
**ORDER WILL SHIP, ANY BACK ORDERS, AND AN ESTIMATE WHEN B/O**
**WILL. SHIP. Fax 631-218-3285 or Phone 631-218-8376 EXT 210 only if necessary.**
**ALL ITEMS ARE SUBJECT TO QUALITY CONTROL INSPECTION**

| | |
|---|---|
| Net Order: | 6,697.60 |
| Freight. | 0.00 |
| Order Total: | 6,697.60 |

**000**

## PURCHASE ORDER

Page 1 of 1

## SUMMIT TECHNOLOGIES LLC

95 Orville Drive
Bohemia, NY 11716

Phone: 631-218-8376

Fax:: 631-218-3285

**P.O. NUMBER :** 0021197

**ORDER DATE :** 01/17/05

**VENDOR NUMBER :** VI200

**VENDOR:**

I S V Chips
45 Main Street
Suite 309 #300
Brooklyn, NY 11201

**SHIP TO :**

**SUMMIT TECHNOLOGIES**

**95 Orville Drive**
**Bohemia, NY 11716**

Prepaid:    0.00

| SHIP VIA: | | PHONE: 912-634-7762 FAX: 912-634-1073 | | Contact JUNIOR | | TERMS Net 15 Days | |
|---|---|---|---|---|---|---|---|
| ITEM NUMBER | Vendor # | | REC | ORDERED | B/O | UNIT COST | AMOUNT |
| UWLEX 000 | 7905 | | | 2,240.000 | 0.00 | 2.99 | 6,697.60 |
| Universal Lexmark Waste Hopper | | | | | | | |
| — DAVID PLEASE LET ME KNOW WHEN THEY ARE READY TO BE — PICKED UP. | | | | | | | |

**YOU MUST: FAX THIS ORDER BACK WITH A NOTE AS TO WHEN THE ORDER WILL SHIP, ANY BACK ORDERS, AND AN ESTIMATE WHEN B/O WILL SHIP. Fax 631-218-3285 or Phone 631-218-8376 EXT 210 only if necessary. ALL ITEMS ARE SUBJECT TO QUALITY CONTROL INSPECTION**

| | |
|---|---|
| Net Order: | 6,697.60 |
| Freight | 0.00 |
| Order Total: | 6,697.60 |

# Exhibit 2

# ISV

**45 Main St**
**Suite 309 #300**
**New York, NY 11201**

# INVOICE
## 12/14/2004

| Bill To | Ship To |
|---|---|
| Summit Technologies<br>95 Orville Drive<br>Bohemia, NY 11716 | Summit Technologies<br>95 Orville Drive<br>Bohemia, NY 11716 |

| Invoice # | P.O. Number | Terms | Ship | Via | F.O.B. |
|---|---|---|---|---|---|
| 34501383 | 0020793 | Net 15 | 12/14/2004 | Federal Express | |

| Part Number | Description | Price Each | Quantity | Amount |
|---|---|---|---|---|
| FUL2 | Universal Wastebin | 2.99 | 2,800 | 8,372.00 |

| | | |
|---|---|---|
| **Total** | | $8,372.00 |
| **Balance Due** | | $8,372.00 |



# INVOICE

## 12/16/2004

**ISV**
45 Main St
Suite 309 #300
New York, NY 11201

| Bill To | Ship To |
|---|---|
| Summit Technologies<br>95 Orville Drive<br>Bohemia, NY 11716 | Summit Technologies<br>95 Orville Drive<br>Bohemia, NY 11716 |

| Invoice # | P.O. Number | Terms | Ship | Via | F.O.B. |
|---|---|---|---|---|---|
| 34501392 | 0020939 | Net 15 | 12/16/2004 | Truck Freight | |

| Part Number | Description | Price Each | Quantity | Amount |
|---|---|---|---|---|
| FUL2 | Universal Wastebin | 2.99 | 1,120 | 3,348.80 |

| | | |
|---|---|---|
| **Total** | | $3,348.80 |
| **Balance Due** | | $3,348.80 |

# ISV

**45 Main St**
**Suite 309 #300**
**New York, NY 11201**

# INVOICE
## 1/17/2005

| Bill To |
| --- |
| Summit Technologies<br>95 Orville Drive<br>Bohemia, NY 11716 |

| Ship To |
| --- |
| Summit Technologies<br>95 Orville Drive<br>Bohemia, NY 11716 |

| Invoice # | P.O. Number | Terms | Ship | Via | F.O.B. |
| --- | --- | --- | --- | --- | --- |
| 34501439 | 21197 | Net 15 | 1/17/2005 | Truck Freight | |

| Part Number | Description | Price Each | Quantity | Amount |
| --- | --- | --- | --- | --- |
| FUL2 | Universal Wastebin | 2.99 | 2,240 | 6,697.60 |

| | | |
| --- | --- | --- |
| **Total** | | $6,697.60 |
| **Balance Due** | | $6,697.60 |



# INVOICE
## 1/25/2005

**45 Main St**
**Suite 309 #300**
**New York, NY 11201**

| Bill To | Ship To |
|---|---|
| Summit Technologies<br>95 Orville Drive<br>Bohemia, NY 11716 | Summit Technologies<br>95 Orville Drive<br>Bohemia, NY 11716 |

| Invoice # | P.O. Number | Terms | Ship | Via | F.O.B. |
|---|---|---|---|---|---|
| 34501452 | 21197 | Net 15 | 1/25/2005 | Truck Freight | |

| Part Number | Description | Price Each | Quantity | Amount |
|---|---|---|---|---|
| FUL2 | Universal Wastebin | 2.99 | 2,240 | 6,697.60 |

| | Total | $6,697.60 |
|---|---|---|
| | **Balance Due** | **$6,697.60** |